[L. A. No. 1892.    Department Two.—July 30, 1907.]

## DANIEL DURKEE, Respondent, v. CHINO LAND AND WATER COMPANY, Appellant.

NEGLIGENCE—TRESPASSING CATTLE—EVIDENCE—FINDINGS — DAMAGES.— In an action to recover damages from the defendant, claimed to have been sustained by the plaintiff on account of the defendant wrongfully and negligently allowing its cattle to trespass upon certain grain and pasture lands owned and leased by him, the evidence is reviewed and held to sustain the finding of negligence on the part of the defendant in caring for its cattle, and also the finding of the amount of damages suffered by the plaintiff.

ID.—MEASURE OF DAMAGES—ACQUIESCENCE BY DEFENDANT IN THEORY OF PLAINTIFF.—Where such action was tried on the assumption, acquiesced in by both sides, that a certain rule for the measure of damages was correct, and evidence in support thereof was introduced without objection, the defendant, against whom judgment was rendered, cannot subsequently be permitted to question the correctness of the rule so adopted or to raise the question of the sufficiency of the evidence to sustain the finding of damages when tested by some other and different rule or the competency of the evidence introduced.

APPEAL from a judgment of the Superior Court of San Bernardino County and from an order refusing a new trial. Frank F. Oster, Judge.

The facts are stated in the opinion of the court.

J. S. Chapman, and Ward Chapman, for Appellant.

E. W. Freeman, and A. D. Laughlin, for Respondent.

LORIGAN, J.—This action was brought by plaintiff to recover damages from the defendant, claimed to have been

sustained by him on account of the defendant wrongfully and negligently allowing its cattle to trespass upon certain grain and pasture lands owned and leased by him in the vicinity of Chino, in San Bernardino County.

The complaint stated four causes of action, and judgment was rendered in favor of plaintiff upon the first three, but denied upon the fourth.

The first count alleged the trespass of said cattle on three hundred and twenty acres of land belonging to plaintiff between December 1, 1902, and September 1, 1903, during which time they ate up and injured growing hay and verdure thereon to the damage of plaintiff in the sum of one hundred and seventy-five dollars. The court allowed damages on this count in the sum of one hundred and fifty dollars.

The second count alleged the trespass by the cattle of defendant, between the same dates, on another tract in possession of plaintiff containing one hundred and twenty acres; that they ate up and destroyed the grain, hay, grass, and verdure thereon, causing the loss of pasture to the amount of one thousand and eighty dollars; that said cattle broke down the fences on said tract and damaged plaintiff in the further sum of one hundred and fifty dollars; that as a result of such trespass by the cattle of defendant, and destruction of said fences, ten head of cows belonging to plaintiff mingled with the trespassing cattle of defendant and with them escaped from said tract of land and were lost, to the further damage of plaintiff in the sum of five hundred dollars, making in all a total of sixteen hundred and thirty dollars damages. On this count the court allowed seven hundred and twenty dollars for the loss of grass and pasture; for destruction of fences, fifty dollars; and for the loss of cows, five hundred dollars,—making twelve hundred and seventy dollars. It deducted from this, however, the sum of one hundred and five dollars, an installment of rent on a lease of these premises due from plaintiff to defendant.

The third count alleged a further trespass of defendant's cattle, between the same dates, upon two other tracts of land in possession of plaintiff, aggregating fifteen hundred acres, and constituting practically one pasture, whereby the fences of said tract were broken down, and the grass, hay, and verdure destroyed; that on account of the destruction of said

grass, hay, and verdure plaintiff was compelled to purchase alfalfa hay at the expense of fifteen hundred dollars, which expenditure would have been unnecessary save for the destruction by said cattle of the hay, grass, and verdure growing on said lands. It was further alleged in this count that by reason of the destruction of said grass and verdure sixty head of young cattle belonging to plaintiff, of the value of five hundred dollars, were deprived of proper food and perished. Plaintiff laid his damages resulting from the destruction of said grass, hay, and verdure on said land, and the breaking down of said fences, in the sum of $2,599.80. The court allowed on this count for the destruction of grass, nine hundred dollars damages, and for destruction of fences six hundred dollars, but found against plaintiff for the alleged loss of sixty head of young cattle.

In relation to the fourth count, the court found against plaintiff as to its allegations, and it is unnecessary to particularly refer to them.

Judgment was given plaintiff for the amounts found in his favor on the three counts, aggregating the sum of two thousand eight hundred and fifteen dollars.

The defendant moved for a new trial upon various grounds, the principal claim in support of it being that the evidence was insufficient to support the finding of negligence on the part of defendant in caring for its cattle, and further that there was no evidence sufficient to support the findings of the court of the amount of damages suffered by plaintiff, or any of its various items.

In disposing of the motion for a new trial the court ordered a reduction of twenty dollars to be made from the judgment on the first count and one hundred and eighty dollars from the judgment on the second count, and that if this reduction was accepted by plaintiff the motion for a new trial be denied. The reduction was accepted by the plaintiff, and the defendant thereupon appealed from the judgment and order denying its motion for a new trial.

The evidence shows that the vicinity in which the trespasses complained of by plaintiff occurred was devoted largely to the cattle business, the people living there being principally engaged in dairying, conducting it with gentle native dairy cows. The plaintiff was thus extensively engaged, using the

fields upon which the trespass of the cattle occurred for such dairy purposes. The defendant was not engaged in dairying, but in raising cattle for the market. The ranch upon which its cattle were supposed to range consisted of some forty-six thousand acres, and upon this were carried at the dates involved in this action something over three thousand head of cattle, of which by far the larger number were what are called Sonora or Mexican cattle. It was these Mexican cattle which entered upon the fields of plaintiff, depastured and destroyed the growing crops and natural feed thereon, broke down his fences, and caused all the damage to him which the court found he sustained, and upon which it awarded him judgment. As to the disposition of these Mexican cattle,—their roving and destructive propensities,—there is a unanimity in the testimony of the witnesses on the subject. They were wild "long-horned cattle" which wandered on or off the range at will, and whose roving disposition was not restrained by the presence of any ordinary fence. Excerpts from the testimony of a few of the witnesses called (and the same views are expressed by all who spoke upon the subject) so sufficiently describe the character of these cattle as to make further reference to it unnecessary. One witness, speaking upon the subject, said: "I don't believe there is a ranch in that country that they have not looted, and to do it they would have to break half a dozen fences. It is no more trick to go through half a dozen fences for that band of steers than to go along the road peaceably on a Sunday afternoon." Another: "They would jump and run and go right through the fences." And a third: "The Chino cattle were wild and fences did not stop them. They were monarchs of all they surveyed." And the foreman of the defendant is also credited in the testimony with having summarized the evil tendencies of these animals in the declaration that "a whirlwind isn't in it with these cattle."

We refer to the characteristics of these cattle in connection with a claim of appellant that the evidence was insufficient to sustain the finding of the court that defendant was negligent in their care.

It was the duty of the defendant, in view of the roving and destructive tendencies of these cattle, to take commensurate precautions to prevent their escape from the range upon which they were placed. Reasonable care on account of their known

disposition required that a greater diligence should have been
exercised concerning them than would be required relative
to ordinary range cattle. The evidence on behalf of defend-
ant tended to show that it had at most four vaqueros to ride
along and repair the fences, which extended eight or nine
miles around the ranch, and to look after all the cattle on the
range, and that they rode these fences, as one testified, once
or twice, another two or three times a week. No particular
attention was given to the fences on the ranch in the vicinity
of the premises of plaintiff where these cattle of marauding
tendencies were ranging, or to keep them back on the range,
and under the circumstances the court would be justified in
finding that no sufficient care over them was exercised by
defendant. Aside from this, the evidence on behalf of plain-
tiff warranted the court in finding that even the attention
claimed to have been given was not sufficient, as that testi-
mony showed that the cattle were constantly in the fields of
plaintiff while the feed there lasted, and when driven out
one day returned the next, and that defendant had informa-
tion and knowledge of their constant and continued depreda-
tions. The plaintiff made frequent complaints from the be-
ginning to the end of the trespassing of these cattle. He
testified that he complained at the head office of the company
in San Francisco, at the main office at Chino, and to the
superintendent of the corporation at the ranch. He told them
that these cattle were destroying all the feed in his fields and
breaking his fences, that he had kept men riding after them,
that his horses were worn out, and that he had to have relief.
To these appeals he received only evasive answers, and gives
what he terms "a fair illustration" of the result of one of
them and the general result of all. He stated:—

"I went to the office and saw the clerk there in charge—
in the Chino office—and I stated the case very thoroughly,
that there were two or three hundred head of their steers
there; that they were there for a long time, and that I
would n't have a thing if there was n't something done; and
the agent asked me what time I could get up in the morning.
I told him I could get up in the dead hour of the night if I
could get relief. He said, 'You get up to-morrow morning
bright and early, and be here about the home ranch, and you
will meet the vaqueros, and you state your case to them.'

I got up before daylight, and it was very cold, and I drove up about sunrise, and I met Mr. Williams and four others all mounted, coming leisurely from the home ranch and I stopped the gentlemen and stated my case to them.

"Mr. Williams was very kind, so far as he had anything to say, and he said, 'Mr. Durkee, we can't do anything for you. We have to go to work at the silo on the east side.' I asked if I could not have one man, and that my horses were worn out. And he said, 'We can't spare even one man.' I said, 'How long will you be busy?' He said, 'About six days or a week.' I said, 'Is n't there any one who can give me any relief?' And he said, 'You go up to the home ranch and see Mr. Gird.'

"That is about the way they kept me going from one fellow to another. Mr. Gird was connected with the company. I went to the home ranch and told the same thing to Mr. Gird, and when I got through I received information that Mr. Steele was the man to see. I inquired where I could find Mr. Steele. The information was that Mr. Steele was in Mexico, and I did n't go any further.

"After all these complaints occasionally the men would come up and take out a few and put them over the fence, and they would be back before the night, as a rule, and bring some more with them."

While this is not all the evidence bearing on the question, it was enough to warrant the court in its finding that the defendant had neither taken sufficient precautions to prevent the trespassing of defendant's cattle upon the premises of plaintiff nor exercised due diligence in removing them when they were doing so.

We approach now the next point urged by the appellant, and to which its argument on this appeal is mainly addressed, —namely, that the finding of material injury suffered by plaintiff through the trespassing of these cattle and the amount of damages found to have been sustained are not justified by the evidence.

As to the material injury suffered by plaintiff, there cannot be the slightest question under the evidence. It showed, as far as the grain and feed upon the fields of plaintiff were concerned, that such fields were depastured, or the feed thereon destroyed, by the constant incursions of these cattle

of defendant upon the premises, and it equally showed that the destruction of his fences was likewise occasioned by them. It would be a waste of time to discuss the evidence in the record upon these subjects, as it completely sustains the findings of the court upon them.

The appellant, however, insists that the evidence showed that other cattle besides those of defendant trespassed upon the fields of plaintiff, and that the owners thereof were responsible for some of the damage occasioned by plaintiff, and that the court was not warranted in finding that the injuries sustained were the result of the trespass of defendant's cattle alone. While some twenty-three witnesses were called in the case on behalf of both sides,—persons in charge of the cattle of plaintiff and those of defendant, men riding the ranges caring for the stock, repairing fences and driving out the cattle of defendant,—only three testified that any other stock save those belonging to either plaintiff or defendant were ever seen in the fields of plaintiff. These witnesses testified that they each on one occasion saw a few head there. When they were there, how many were there, or how long they remained the evidence does not show, and assuming that the court was required to accept this testimony, it was too indefinite and uncertain to be given any serious consideration. If it be conceded that the mere presence of these cattle—which is practically all that was proven relative to them—damaged to some extent the fields of plaintiff, still the court was warranted under the evidence in finding that it was too trivial and inconsequential to affect the substantive damage proven to have been occasioned through the continuous trespassing of large numbers of the cattle of defendant.

Now, as to the next point—the sufficiency of the evidence to sustain the finding of the court as to the various amounts in which the plaintiff sustained damage under the separate counts of his complaint. And first as to the damages allowed for the destruction of the grain and pasturage. Plaintiff, who was a practical farmer as well as dairyman, testified as to the first count that the damage he sustained by the trespass of the cattle was the destruction of a nine-acre field of growing barley, and fixed the amount of his damages at one hundred and seventy-five dollars, based upon the appearance of the grain and surrounding conditions and the probable yield of

hay per acre and its value per ton if it had been permitted to mature and had been harvested. He testified that the probable yield of the field in hay would be fifteen tons, of the value of ten dollars per ton. The court originally found on this basis the damage to be one hundred and fifty dollars; but upon the motion for a new trial, it being called to the attention of the court that hay worth twenty dollars had been taken from this tract by plaintiff, the damages on this count were reduced to one hundred and thirty dollars.

As to the field described in the second count, plaintiff testified that the grass and verdure there destroyed by the cattle of the defendant, was of the value of seven hundred and twenty dollars. Another witness testified that the value of the feed on this one-hundred-and-twenty-acre tract for dairying was worth one dollar per head of stock per month, and that it would sustain at least sixty head of cattle the year round. This would figure seven hundred and twenty dollars per annum as the value of the pasturage; but as the plaintiff pastured the tract for three months, the court made a deduction of one hundred and eighty dollars from that sum.

The fifteen-hundred-acre tract, described in the third count, plaintiff had contemplated using for the conduct of his dairy business and for dairy purposes, and with that object in view had erected necessary structures thereon. He testified that on this tract was the best pasture feed known in that section; it produced the best milk and the best returns. He was feeding on this tract and milking one hundred head of cows, selling the milk from them under contract in Los Angeles at a net profit of four hundred and fifty dollars per month. The feed on this range would support these cows for three months, and after they were pastured there a month the depredations of defendant's cattle commenced, resulting in the total destruction of the feed to plaintiff, and he estimated his damages at nine hundred dollars, on the basis of the net profits which he would have obtained from the sale of milk during these two months—four hundred and fifty dollars per month—had the pasturage not been destroyed by the trespass. Another witness testified that the net returns from milk would be four and a half dollars per head for the same time, or four hundred and fifty dollars per month. The court allowed damages on this basis for nine hundred dollars.

It is claimed that this evidence afforded no proper basis for the allowance of damages.

Upon the record, however, we do not see how the appellant can be heard to raise the question whether it presented the proper basis or not. This case was tried in the lower court by counsel for defendant other than those representing it on this appeal. The complaint set forth in the several counts the nature, character, and amount of damages sustained by plaintiff, and the court found that plaintiff had been damaged by the trespass on his property as alleged and the extent of that damage. The plaintiff presented the evidence as to damages to which we have referred upon the theory that he was adopting and following the proper and legal rule for establishing them. No objection was made by defendant to the introduction of any of the evidence, nor was it suggested by defendant until after judgment and on the motion for a new trial that the rule which was adopted by plaintiff was not the proper or correct one for the measurement of damages. Not only was no objection then-made or a different rule suggested, but counsel for defendant, though not introducing any evidence on the subject of damages, cross-examined the witnesses of plaintiff on the matter of damages testified to by them with a view of reducing the amount claimed. The failure of defendant to object to the evidence and defendant's cross-examination of the witnesses were equivalent to a concession that the evidence was competent on the question of damages and an acquiescence in the theory of plaintiff that it was presented under a correct rule for proving them. This was in effect an acceptance of the evidence as competent upon the subject of damages and that the correct rule for their measurement was being followed. If, in the opinion of defendant, the rule adopted was not the correct one, it was defendant's duty to have objected to the evidence offered under it and to have insisted upon the proper rule being applied. This would have given counsel for plaintiff, if he was pursuing the wrong course, an opportunity for rectifying his mistake, or, in the event of dispute between counsel as to the true rule, would have afforded an opportunity to the court to declare it. This counsel for defendant did not do, but, on the contrary, tacitly conceded that the correct rule was being followed and competent evidence was being offered under it. While parties

have a right to insist that damages shall be measured by a recognized legal standard, error cannot always be predicated upon failure to do so. There is no rule of practice which precludes them from trying the question of damages on any theory they see fit. They may adopt any rule which they deem proper, and courts will not interfere of their own motion to compel the adoption of a rule contrary to that which the litigants are satisfied to accept. If they are satisfied, the court will be. When they do adopt such a rule they are bound by it, and neither one will be subsequently permitted to question his own conduct relative to it. This is the situation here. The defendant acquiesced in the correctness of the standard adopted by plaintiff. It is to be assumed that defendant deemed the rule which was followed as favorable to itself as any other which it might suggest. In any event, it made no objection to the evidence presented under it, suggested no other or better rule, and examined the witnesses on the theory that it was the correct one. Under these circumstances defendant is concluded from raising any question as to the sufficiency of the evidence to sustain the damages on the ground that the rule adopted for the measurement of them and under which the evidence was received was not the correct one.

The evidence which was presented on behalf of plaintiff was sufficient to sustain the findings of damages under the rule adopted and acquiesced in by defendant for ascertaining them. This being true, the contention of appellant then practically amounts to a claim that the evidence did not justify these findings because if the correct rule for measuring damages had been adopted the evidence received would not have been competent to prove them. But if the correct rule was not being followed, defendant should have objected to the evidence and insisted on the true rule being adopted, and if the objection was overruled, have excepted and assigned the ruling as error, and based his motion for a new trial upon that ground. To claim now, under a specification of insufficiency of evidence, that the evidence did not justify the finding of damages because it was admitted upon an incorrect theory as to the proper rule for measuring them, is, in effect, to assign the admission of the evidence as error of law, a matter which, even had an objection and exception been taken, could not

under any circumstances be presented or considered under a specification of insufficiency of evidence.

As the rule adopted by plaintiff for the measurement of damages was acquiesced in by defendant, no objection raised by it to the competency of the evidence given under it, and as that evidence fully sustains the findings, the defendant is concluded by its conduct from raising any question of the sufficiency of the evidence when tested by some other and different rule than the one adopted and acquiesced in upon the trial. In this view, whether the rule adopted for the ascertainment of damages was the correct one or not, we are not called upon to consider. It was the one adopted and acquiesced in by both parties and followed by the court, and neither of the litigants can be heard after judgment to question its correctness or the competency of the evidence introduced under it. (*Gooddale* v. *West,* 5 Cal. 339, 341; *McCloud* v. *McNeal,* 16 Cal. 393, 398; *Janson* v. *Brooks,* 29 Cal. 214, 223; *Bullard* v. *Stone,* 67 Cal. 477, 482, [8 Pac. 17]; *Storey* v. *Nidiffer,* 146 Cal. 549, 552, [80 Pac. 692].)

Appellant attacks the further findings as to the loss of ten head of cows by plaintiff and the destruction of his fences through the negligent trespass of the cattle of defendant.

As to the cows. These were part of a herd of sixty-two being pastured by plaintiff on the one-hundred-and-twenty-acre tract. There can be no question as to their value as found by the court, and the only question is whether the evidence warranted the court in finding that through the negligence of the defendant in permitting its cattle to trespass on this field the plaintiff lost them. It is not claimed that the defendant would not be liable if the evidence so showed, and we think it did. We have already referred to the evidence which justified the court in finding that the cattle of defendant were negligently permitted to break down the fences and trespass upon the several fields of plaintiff described in the complaint, and no further discussion of that matter is necessary. As to the escape of the cows in question, it appears that they were being pastured with the rest on this tract when the several incursions of defendant's cattle upon it commenced; that defendant's cattle would break in and herd and feed with plaintiff's cows, and when run out would take the cattle of plaintiff with them; that while the cows would run out with

the wild cattle, they would not herd with them, and usually could readily be got together for plaintiff to put them back in the field. While no one saw the cows leaving the field of plaintiff, still the court was warranted from this evidence, and the other circumstances disclosed, in reaching the conclusion that these cows had mingled and gone with defendant's trespassing cattle, and been lost in the hills of the Chino range. After he missed them plaintiff asked permission of defendant's superintendent to search for them on the Chino ranch and was refused.

As to the destruction of the fences of plaintiff and the damages therefor as found by the court, the findings in both respects are sustained by the evidence.

The judgment and order appealed from are affirmed.

McFarland, J., and Henshaw, J., concurred.