[Civ. No. 6707. Second Appellate District, Division One.—October 22, 1931.]

C. K. FIEDLER, Respondent, v. R. E. ALLEN, as Receiver, etc., et al., Defendants; AMERICAN SURETY COMPANY OF NEW YORK (a Corporation), Appellant.

O'Melveny, Tuller & Myers and Pierce Works for Appellant.

Bordwell, Mathews & Wadsworth, Ray W. Bruce and John H. Mathews for Respondent.

CONREY, P. J.—On December 27, 1926, the J. E. K. Financial Service, Inc. (hereinafter called Financial Service), as principal, and the American Surety Company of New York, as surety, executed on behalf of said Financial Service a broker's bond as required by section 5 of the Corporate Securities Act as amended in the year 1925 (Stats. 1925, p. 967). The bond was executed for the calendar year 1927. During the period of the transactions referred to herein, said Financial Service was engaged in business as a licensed broker in this state, and said undertaking was in force. This action was brought to recover judgment under and within the terms of said undertaking.

On September 30, 1927, the defendant Allen qualified under appointment as receiver of said Financial Service, and under permission duly given he was made defendant in this action. Judgment was entered against the Surety Company alone in the sum of $3,090, plus $30.21 costs. The judgment is silent concerning any right of action of plaintiff against the receiver. From that judgment the Surety Company prosecutes this appeal.

The conditions of the undertaking were such that if the principal, and any and all agents and employees representing such principal, should comply with the provisions of said Corporate Securities Act, "and shall honestly and faithfully apply all funds received, and faithfully and honestly perform all obligations and undertakings, in the purchase or sale of securities by said broker, his agent and employees, . . . then this obligation shall be void; otherwise to remain in full force and effect".

The liability sought to be enforced herein arises out of the alleged conversion by Financial Service of three $1,000 bonds of the Meriondale Electric Company. On August 22, 1927, respondent entered into a contract in writing with Financial Service whereby Financial Service was employed as respondent's agent for the purchase of certain shares of stock of sundry corporations. As a deposit on the purchase of said securities respondent delivered to the broker said three Electric Company bonds, which were thereupon given a "loan value" of $2,256. The contract was upon a printed form, and on the face thereof it was stated that the employment "shall be governed by the conditions printed on the reverse side hereof". Those conditions were printed in a series of numbered paragraphs, one of which reads as follows: "(6) It is further agreed that in case any securities are deposited with the agent by the principal as security for the performance of this agreement, the agent may pledge such collateral or securities to the extent of its interest therein, or to the amount advanced by it for the account of the principal on such collateral or securities."

Pursuant to said contract of employment, Financial Service purchased the securities specified in the agreement, which was in the nature of a marginal contract under which the aggregate purchase price of said securities would be approximately two and a half times the amount of the agreed loan value of said Electric Company bonds. Said purchases, however, were made through another broker, Henry H. Nelson & Co., in accordance with an existing contract between the two brokers, which contract authorized Nelson & Company to hold in pledge any securities purchased by it for account of the first broker, as well as any other securities deposited in pledge by the first broker with Nelson & Company in the course of transaction of the business provided

for by the agreement. In the general contract existing between the two brokers, and under which their business was transacted, Nelson & Company were authorized, whenever they should deem it necessary for their protection, to sell any or all of the securities held by them in connection with the Financial Service account. When Financial Service placed its order with Nelson & Company to purchase said stocks for respondent, said three Electric Company bonds of respondent were delivered in pledge by Financial Service to Nelson & Company in accordance with said agreement between the brokers. The purchases of stocks for respondent were promptly reported by Nelson and Company to Financial Service and entered on the books of Financial Service as charges against respondent. The result of these transactions as shown on the books of Financial Service was that on the 16th of September respondent was indebted to Financial Service in the sum of $3,654.46 in addition to the sum of $2,256 loaned to respondent on the bonds. The securities, that is to say, the shares of stock purchased through Nelson & Company remained in the possession of Nelson & Company and were never delivered to Financial Service or to the plaintiff. The evidence is that they were all sold out by Nelson & Company before the end of that month. It further appears that on October 3, 1927, Nelson & Company sold said Electric Company bonds which had been pledged by respondent to Financial Service and repledged as above stated.

From the foregoing and other facts in evidence the court was justified in finding, as by implication it did find, that on or before September 30, 1927, the purchase and sale of stocks, under the employment of Financial Service by respondent, had been so concluded that respondent was no longer in debt to Financial Service and so was entitled to the return of his Electric Company bonds. But the return of those bonds became impossible on October 3d because they had been sold by Nelson & Company, and Financial Service having become insolvent was in the hands of a receiver. It was by virtue of the facts thus shown that the trial court held that said Electric Company bonds had been converted by Financial Service, and that respondent was entitled to indemnity from appellant as surety on the undertaking sued on in this action.

It is contended by appellant that the evidence is insufficient to support and is contrary to any finding, actual or implied, that Financial Service converted the bonds. It must be conceded that both under the contract and under the provisions of section 2990 of the Civil Code, Financial Service was entitled to repledge the bonds, but only to the extent of its interest therein. (*People* v. *Tambara,* 192 Cal. 236 [219 Pac. 745].) If we assume for the purposes of the argument that the pledging of the Electric Company bonds by Financial Service to Nelson & Company, at the time and in the manner in which they were so pledged, did not constitute a conversion of the bonds, this fact would not prove that there was no conversion at all. According to the testimony of the witness Warfield, vice-president of Financial Service, all of the Fiedler stocks were sold on or before September 30th. But, through the method of the business transactions, as conducted between Nelson & Company and Financial Service, those stocks were mingled with stocks of other customers or clients of Financial Service in such manner that the actual shares purchased for account of any one customer would not be identified except by a system of apportionment and accounting, which in this case appears never to have been completed. It does appear, however, that on or about October 22, 1927, the defendant Allen, as receiver, received a check in the sum of $4,715.12 as the balance of account between Nelson & Company and Financial Service, which sum was deposited in the receiver's account. How much of this balance was the result of transactions concerning the Fiedler stocks, the record does not show.

We are of the opinion, however, that when Financial Service pledged the Meriondale bonds to Nelson & Company for an indefinite sum, including indebtedness unconnected with the purposes of the pledge made by Fiedler, such repledging was a wrongful conversion of said bonds, and was sufficient to constitute a basis for an action on the broker's bond.

With reference to appellant's discussion of certain questions relating to demand and refusal, as evidence of the conversion of the bonds, we think it sufficient to say that since, at the time of the demand (if any demand at all was made), the bonds were not in possession of the broker Finan-

cial Service and had passed beyond its control, it follows that no demand was necessary.

We think that the court did not err in refusing to strike the testimony of the witness Levi as to the value of the bonds. His testimony showed a familiarity with said bonds and their market value sufficient to authorize him to testify on the subject.

As the liability of the principal and surety on the bond was joint and several, appellant has no cause of complaint based on the fact that judgment was entered against appellant alone and is silent concerning the disposition to be made of the action as against the receiver.

The judgment is affirmed.

Houser, J., and York, J., concurred.