[Civ. No. 10707.   Second Appellate District, Division Two.—February 25, 1936.]

T. K. YAMADA, Respondent, v. MASUE OSAWA et al., Appellants.

134

Walton C. Webb and Everett H. Smith for Appellants.

J. Marion Wright for Respondent.

CRAIL, P. J.—All of the defendants except the defendant K. Hirano appeal from a judgment in favor of the plaintiff in an action for damages for conversion of certain stocks. Defendant Hirano defaulted and judgment was entered against him, although his deposition was taken before trial and used as evidence by the other defendants.

Viewing the evidence in the light most favorable to the party who was successful in the trial court, and drawing all inferences in his favor which may be reasonably drawn therefrom, which it is our duty to do, the following is a statement of the facts in the case. On September 30, 1930, the plaintiff was the owner and in possession of 300 shares of stock of the Tokio Subway, Inc., and of 100 shares of stock of Asano Cement Company. Defendant Hirano was a stock broker and the employee and representative of the other defendants, except the bonding company. On that day the plaintiff delivered to Hirano, as such agent, the certificates of stock above mentioned, together with a power of attorney, and Hirano accepted them on behalf of said defendants for the purpose of selling them for the plaintiff at the price of 14 yen per share for the Tokio Subway stock and 13 yen per share for the Asano Cement stock. A yen was worth 49.40 cents in money of the United States. It was agreed that the Asano Cement stock would be sold immediately and that the Tokio Subway stock would be sold on or before October 31st. The market value of the stock at the time was at the prices above indicated. Hirano sold the 300 shares of Tokio Subway stock to Hakushin Sha in San Francisco and retained the 100 shares of Asano Cement stock in his possession with the consent, knowledge and permission of Hakushin Sha. He later sold

this stock for 17½ yen per share. This money he wrongfully appropriated and spent for his own use, although he reported to plaintiff that the stocks had all been sold as per their agreement and that the money would be paid to plaintiff when it came from San Francisco. Plaintiff demanded the return of the Asano Cement stock but was informed by Hirano that it, as well as the Tokio Subway stock, had already been sold. Plaintiff never received anything at all in payment for his stock, and the stock itself was never returned or tendered back to him.

During these transactions and at the time of the delivery of the stock by plaintiff to Hirano, and at the time of the sale by Hirano, there was in full force and effect a $5,000 stock broker's surety bond with the defendant bond company as surety thereon, as required by law for the benefit of any person suffering loss or damage by reason of any fraud or other act in violation of the provisions of the Corporate Securities Act. This bond by its terms covered all activities on the part of Masue Osawa, Hakushin Sha or any of their agents or employees.

By way of defense, the defendants offered in evidence a document entitled ''Purchasing Contract'' which was executed on the same day as the delivery of the stock by plaintiff to the defendants. This purchasing contract, however, concerned another transaction in stocks. The defendants did not follow up this attempted defense by advancing any evidence to prove that this purchasing contract was ever acted upon or performed by either party. It was the theory of the plaintiff and the holding of the court that this contract did not affect the transaction upon which suit was brought.

It is the contention of the defendants that there was no substantial evidence to sustain the findings of the trial court as to conversion, agency, value of the stock and liability of the surety. We have read the record and find that there is substantial evidence to sustain the findings. It would serve no useful purpose to comment further upon this contention. (*Koeberle* v. *Hotchkiss*, 8 Cal. App. (2d) 634 [48 Pac. (2d) 104]; *People* v. *Groves*, 9 Cal. App. (2d) 317 [49 Pac. (2d) 888, 50 Pac. (2d) 813].)

The defendants further contend that the delivery of the Asano Cement stock to Hirano was a private deal between

Hirano and the plaintiff, and in their effort to sustain this contention devote considerable time to the deposition of Hirano, which was offered in evidence by them and which so states the facts to be. But the defendants must remember that it is not for this court to consider the evidence which is contradictory to the findings of the trial court nor to weigh the evidence with regard to said transaction. Upon appeal the search for evidence stops when the court finds in the record substantial evidence to sustain the findings.

The defendants earnestly contend that the so-called purchasing contract was the real contract between the parties, the one into which the plaintiff actually entered, and urge the long established rule that, when an agreement is once reduced to writing, oral evidence of the terms thereof is inadmissible in the absence of fraud or mistake, neither of which is here involved. This rule is a wise and just one, nevertheless the existence of a written contract for the purchase of the Nippon Industrial Bank stock did not preclude the making of a contemporaneous oral agreement for the sale of the Tokio Subway and Asano Cement stocks as found by the trial court.

The defendants also contend that there was no proof of a demand for the return of the stock. The rule requiring a demand does not apply, however, where as in this case the facts in evidence show a conversion and where the defendants deny plaintiff's title and ownership, and where the proof shows that a demand would have been futile. (*Mier* v. *Southern California Ice Co.*, 55 Cal. App. 512 [20 Pac. 83]; 24 Cal. Jur. 1032, sec. 10; *Carver* v. *Ketchum*, 53 Idaho, 595 [26 Pac. (2d) 139].)

Judgment affirmed.

Wood, J., and Gould, J., *pro tem.*, concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on March 24, 1936, and an application by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on April 21, 1936.