MATTOX, Trustee in bankruptcy, Respondent, vs. GIBSON, Appellant.

SAME, Respondent, vs. FREITAG, Appellant.

*November 12—December 6, 1938.*

534

For the appellants there were briefs by *Roberts, Roe & Boardman* of Madison, and oral argument by *W. Wade Boardman*.

*Glen H. Bell* of Madison, for the respondent.

WICKHEM, J.   The cause of action sought to be stated in each complaint was based on section 60 of the Bankruptcy Act, 11 USCA, § 96.   Section 60a provides in substance that a person shall be deemed to have given a preference if, being insolvent, he has within four months of the filing of the peti‑ tion made a transfer of any of his property and the effect of such transfer will be to enable any one of his creditors to obtain a greater percentage of his debt than any other of such creditors of the same class.   Section 60b provides that if the

bankrupt shall have given a preference as defined in subsection a "and the person receiving it or to be benefited thereby, *or his agent acting therein,* shall then have reasonable cause to believe that the enforcement of such judgment or transfer would effect a preference, it shall be voidable by the trustee and he may recover the property or its value from such person."

In *Grandison v. National Bank of Commerce* (2d Cir.), 231 Fed. 800, 802, it was held that the following circumstances must concur in order to entitle the trustee to recover as a preference property transferred by the bankrupt:

"(1) That a 'transfer' of the property of the debtor has taken place. (2) That the debtor at the time of the 'transfer' was insolvent. (3) That the transfer was made within four months before the filing of the petition in bankruptcy, or after the filing and before the adjudication. (4) The transfer must enable the creditor to obtain a greater percentage of his debt than other creditors of the same class. (5) The person receiving it must have had reasonable cause to believe that the enforcement of the transfer would effect a preference."

With this in mind, it will be convenient to consider separately the situation with respect to the Freitag and the Gibson cases. It is claimed by Gibson that the $500 which the Haake Company owed to him arose by reason of sale of securities in his stock account; that the relationship between broker and customer is fiduciary in character, and that the proceeds of the sale constitute a trust fund; that it being alleged that all sums came into the general account of the Haake Company, it is clear that the proceeds of the sale of defendant's security went into that account; and the fact that the funds were mingled and cannot be traced does not change the relationship from *cestui que trust* to creditor. The case of *Ferguson v. Bauernfeind,* 140 Wis. 42, 121 N. W. 647, is claimed to be in point. In that case Bauernfeind had been leaving money with the C. W. Milbrath Company, engaged in the real-estate

and loan business, to be loaned out by it, and the company had not loaned all the money left by him. After insolvency, Bauernfeind demanded his money and was given a check for the amount on deposit. This court held that the evidence showed a trust relation between defendant and the Milbrath Company under which the company held the money of defendant for the purpose of loaning it. It was held that there was no evidence of a relation of debtor and creditor, and that the fact that the company may have mingled the money deposited with its own funds would not change this conclusion. This determination resulted in the conclusion that the payment was not vulnerable as a voidable preference. The case is not in point here.

This is not the case of a deposit of money for a specific purpose. Here Gibson had an active trading account with the Haake Company which had culminated in the selling of all securities in Gibson's account and a general credit balance in favor of Gibson. It is alleged that the funds upon which the check to Gibson was drawn belonged to the Haake Company and had been paid to them by other customers or borrowed. There is no indication that any special bank account was set up for Gibson, if this has any materiality, and the complaint alleges that no part of the moneys in the bank account on which the check was drawn were derived from the sale of any securities for Gibson's account. It seems evident to us that the complaint alleges facts showing a relationship of debtor and creditor between Gibson and the Haake firm. We do not deem it necessary to labor this point since we conclude that the complaint is fatally defective upon another ground.

Before a preference may be avoided by the trustee in bankruptcy the person receiving it or his agent "acting therein" must have had reasonable cause to believe that the enforcement of the transfer would effect a preference. The com-

plaint contains no allegation that Gibson had reasonable cause to believe that the enforcement of the transfer would effect a preference. Hence, in order to sustain the complaint there must be discovered allegations upon which to base a conclusion that Blum was Gibson's "agent acting therein." The facts in the Gibson complaint clearly disclose that Blum was acting as agent for the Haake Company in his relations to Gibson. It is alleged in the complaint that he was acting in his own interest and that of his customer, and it is contended in the briefs that by accepting the benefits of the preference Gibson ratified the agency. We cannot assent to this line of reasoning. It proves too much. If this were true, any insolvent debtor who, with the interests of a particular creditor in mind, gave the latter a preference, would by reason of the retention of benefits by the creditor become his agent by ratification. Upon this theory all preferences would be voidable. We see no escape from the conclusion that on the facts alleged, Blum was the agent of the Haake Company and not that of Gibson. Allegations that Gibson was a customer of Haake brought to that company by Blum indicate the true relationship. Blum, acting as agent of William J. Haake, Inc., induced Gibson to do his trading through the Haake Company. The relations are not materially different than those between any soliciting agent and his customer. The soliciting agent is not the agent of the customer but of the person for whom he solicits. We conclude that the complaint in the Gibson case fails to allege facts sufficient to constitute a cause of action under the Bankruptcy Act.

The allegations of agency in the Freitag complaint are somewhat different. There it is alleged that the account was discretionary in that authority was given to Blum to buy and sell without consulting Freitag. For the reasons hereafter discussed and the conclusion hereafter arrived at that the Freitag complaint does not allege a preference under section 60a, we

deem it unnecessary to consider whether this factor would compel a different conclusion as to Blum's agency.

The transfer involved in the Freitag case was quite different from that in the Gibson case. The complaint alleges that Freitag had purchased Kroger Grocery & Baking Company stock through the agency of the Haake Company, and this stock was used as collateral by the Haake Company to secure its account with Shields & Company. Blum procured the funds to balance the Freitag account and had the certificates released and delivered to Freitag. This transaction is governed by the doctrine of *Richardson v. Shaw*, 209 U. S. 365, 28 Sup. Ct. 512, 52 L. Ed. 835. It was there held that the relation between a margin customer and his broker is that of pledgor and pledgee; that the customer owns the stock and that its return to him by the broker is not a preference although the broker is insolvent at the time of the transfer. The doctrine of this case has been criticized and defended with considerable vehemence. It has, however, persisted in spite of efforts to have it changed by congress or overruled by the court, and no useful purpose will be served by here reviewing the history of the controversy or the principles involved.

It is suggested by plaintiff that the facts set forth in the complaint in the Freitag action are different from those in *Richardson v. Shaw, supra,* for the reason that in the *Richardson Case* there appears to have been no conversion of the customer's stock, while in the Freitag case there was a conversion by reason of the fact that it was pledged to secure the Haake Company's own market operations. See *Heaphy v. Kerr,* 190 App. Div. 810, 180 N. Y. Supp. 542; *Roberts v. State,* 46 Ohio App. 364, 188 N. E. 763; *Vance Lumber Co. v. Frazer, Goodwin & Colver,* 162 Wash. 347, 298 Pac. 438; *Fiedler v. Allen,* 117 Cal. App. 622, 4 Pac. (2d) 292. We do not deem it necessary to determine whether there was a conversion under the facts alleged in the Freitag case.

In *Gorman v. Littlefield,* 229 U. S. 19, 25, 33 Sup. Ct. 690, 57 L. Ed. 1047, the court said:

"It was, as we have seen, the duty of the broker, if he sold the shares specifically purchased for the appellant, to buy others of like kind and to keep on hand subject to the order of the customer certificates sufficient for the legitimate demands upon him. If he did this, the identification of particular certificates is unimportant. Furthermore, it was the right and duty of the broker, if he sold the certificates, to use his own funds to keep the amount good, and this he could do without depleting his estate to the detriment of other creditors who had no property rights in the certificates held for particular customers. No creditor could justly demand that the estate be augmented by a wrongful conversion of the property of another in this manner or the application to the general estate of property which never rightfully belonged to the bankrupt."

In *In re McIntyre & Co.* (2d Cir.) 181 Fed. 955, stock was deposited with McIntyre & Company, brokers, as security for transactions on the market for the customer's account. McIntyre & Company had no right to pledge the stock for any of its own debts. It did, however, so pledge them. The court held that this was a larceny of the stock, and that the trustee had no better right to it than the bankrupt. It was held that the customer was entitled to the stock as against the trustee. See also *Thomas v. Taggart,* 209 U. S. 385, 28 Sup. Ct. 519, 52 L. Ed. 845.

The next contention is that the doctrine of *Richardson v. Shaw* has been repealed in jurisdictions which have adopted the Uniform Stock Transfer Act. This is claimed to result from the operation of provisions therein that the title to the stock certificate and to the shares represented thereby can only be transferred by delivery of the certificate indorsed in blank or to a specified person, or by delivery of the certificate and a separate document containing a written assignment of the certificate or a power of attorney to sell, etc. The court is asked

to take judicial notice that the Kroger Grocery & Baking Company is an Ohio corporation, and that the Uniform Stock Transfer Act is in force in Ohio. It is claimed that under this act stock delivered to Freitag was originally purchased by Shields & Company on the order of the Haake Company, and that according to the allegations of the complaint the certificates were not transferred to Freitag until just before delivery to him. The contention is that Freitag had no title to the stock until the certificates were transferred to him, and hence that they were not his property prior to that time. It seems to us quite clear that the Uniform Stock Transfer Act has no connection with or effect upon the doctrine of *Richardson v. Shaw*. The doctrine of that case establishes for the purposes of the Bankruptcy Act that such a transaction as is involved in the Freitag case is not a preference. This doctrine is not dependent upon state laws regulating the relation of pledgor or pledgee. The case completely governs all situations in which it is alleged that a preference resulted from the sort of transfer involved in *Richardson v. Shaw*. Apart from this it is evident from what was said in *Richardson v. Shaw* and in *Sexton v. Kessler,* 225 U. S. 90, 97, 32 Sup. Ct. 657, 56 L. Ed. 995, that the Stock Transfer Act can have no effect upon the doctrine because the latter has nothing to do with the technical transfer of title. In the *Sexton Case,* Mr. Justice HOLMES stated:

"When a broker agrees to carry stock for a customer he may buy stocks to fill several orders in a lump; he may increase his single purchase by stock of the same kind that he wants for himself; he may pledge the whole block thus purchased for what sum he likes, or deliver it all in satisfaction of later orders, and he may satisfy the earlier customer with any stock that he has on hand or that he buys when the time for delivery comes. Yet as he is bound to keep stock enough to satisfy his contracts, as the New York firm in this case was bound to substitute other security if it withdrew any, the

customer is held to have such an interest that a delivery to him by an insolvent broker is not a preference."

From the portion of the *Sexton Case* just quoted, it is apparent that the form of the transaction or the procedure by which the broker carries out his commissions to purchase or carry stock for his customers is of no materiality in determining whether a preference has resulted from his ultimate transfer of securities to customers. As indicated in the opinion, he may buy stock in a lump to fill the particular orders and other orders, may increase his single purchase by stock of the same kind, pledge the whole block thus purchased for whatever sum he requires or deliver it over in satisfaction of later orders; he may satisfy the earlier customer with any stock that he has on hand or that he buys when the time for delivery comes; and after doing all or any part of this, he may, while insolvent, deliver any stock that he has on hand of the same kind without being guilty of preference. Further than this, it seems to us that plaintiff's argument, even if granted, would create for plaintiff as fatal difficulties as it avoids. If the argument be true, the title to these shares of stock was in Shields & Company, and the transfer did not diminish the estate of the Haake Company. We conclude that the Freitag complaint discloses no voidable preference.

*By the Court.*—Orders reversed, and causes remanded with directions to the trial court to sustain defendants' demurrers.