[Civ. No. 11420. First Dist., Div. One.—April 23, 1941.]

ELMER W. COY, Appellant, v. E. F. HUTTON & COMPANY, a Partnership, et al., Respondents.

J. Benton Tulley and Keyes & Erskine for Appellant.

Pillsbury, Madison & Sutro, Eugene M. Prince, Eugene D. Bennett and Gerald S. Levin for Respondents.

KNIGHT, J.—The plaintiff, Elmer W. Coy, a customer of the Oakland office of the brokerage firm of E. F. Hutton & Company, brought this action for the recovery of damages on account of the sale of corporate stock which the firm had purchased for plaintiff and held pursuant to a customer's agreement. Judgment was entered in favor of defendants, and plaintiff appeals.

The complaint contained two counts. The first was for conversion, and the second was based on allegations of breach of contract. Defendants' demurrer to the second count was sustained; and by written stipulation plaintiff elected not to amend, but to proceed to trial solely on the first count. Besides denying the allegations of conversion, the defendants pleaded several special defenses, among them being the statute of limitations; that plaintiff was a margin customer, that a balance was owing from him to the brokerage firm, and that the sale of the stock was authorized by the specific terms of

the customer's agreement; also that plaintiff had ratified the sale and was bound by an account stated.

The stock consisted of two hundred shares of Real Silk Hosiery Preferred, and at the time plaintiff was doing business as a customer with the brokerage firm he was western supervisor of salesmen of the Real Silk Hosiery Company, whose main offices were in Ohio. In April, 1932, plaintiff advised the brokerage firm he was leaving California and returning to Ohio, and on May 11, 1932, the firm received a telegram from Dayton, Ohio, purporting to have been sent by plaintiff, directing that the stock be sold and that a check be mailed to him care of 511 Heiss Avenue, Dayton. On the following day, May 12, 1932, in conformity with said telegraphic instructions, the firm sold the stock at current market prices, and on June 7, 1932, mailed its check payable to plaintiff to the address given in the telegram for the balance due him, amounting to $845.85, sending therewith a closing statement of plaintiff's account. The firm heard nothing further about the matter for over two years, at which time, to wit, in July, 1934, plaintiff called at the San Francisco office of the firm and made inquiry as to the disposal of the stock. He was informed that in accordance with plaintiff's telegraphic instructions the stock had been sold on May 12, 1932, and a check mailed to him for the balance of the proceeds received from the sale, together with a closing statement of his account. Eight months later, and on March 26, 1935, plaintiff wrote the firm from Columbus, Ohio, giving instructions to sell the stock, pay a certain indebtedness he was owing to a bank, and send him the balance. The firm replied that the stock had been sold in May, 1932, and that his account had been closed, adding, "with all of which matters you are entirely familiar". Approximately two years thereafter plaintiff made demand for the return of the stock and two days later, to wit, on February 15, 1937, filed the present action.

The telegram of May 11, 1932, directing the sale of the stock was signed "E. M. Coy", but it appears that it was sent by plaintiff's mother under circumstances hereinafter stated; and the cause of action alleging conversion was based upon the ground that plaintiff had not authorized the sending of the telegram and knew nothing about the sale of the stock until nearly two years afterwards.

The circumstances attending the sending of the telegram and relating to the disposition of the firm's check, as they are shown by the evidence, are as follows: Upon leaving California in April, 1932, plaintiff went to the home of his mother and stepfather in Dayton. When he arrived there he was apparently on the verge of a nervous breakdown, and was placed in a private rest home in Cincinnati wherein he was confined for twenty-two months. In order to help meet the expenses of plaintiff's care his mother sent the telegram of May 11, 1932, directing the sale of the stock, and upon receiving the firm's check for the balance of the proceeds of the sale she endorsed plaintiff's name thereon and subsequently deposited the money in a joint account in Dayton which plaintiff, in 1931, had opened in their names, and all of the money so received on said check together with considerably more which plaintiff's mother had deposited in said account was from time to time paid out by her for plaintiff's care in said rest home. Some of the additional money she so deposited was received by her on insurance policies carried by plaintiff, and the remainder was her own money.

Plaintiff left the rest home on February 22, 1934, escaping therefrom, so he claimed; and about a week later he learned for the first time, so he testified, about the sale of the stock and read the closing statement of his account sent by the brokerage firm. About a month subsequently he withdrew the small balance remaining in the joint bank account, and in July, 1934, returned to California. According to plaintiff's own testimony, neither before returning to California nor afterwards did he make any inquiries of or ask for any explanation from his mother about the sale of the stock, the sending of the telegram, or the disposition of the proceeds of the check.

The trial took place before the court sitting without a jury, and the court made no finding as to whether or not there had been a conversion. Its decision in favor of defendants was based on the finding that plaintiff's cause of action, "if any arose", was barred by the three year statute of limitations (Code Civ. Proc., subd. 3, sec. 338). In so finding the court held as shown by its written opinion that in an action for conversion as distinguished from an action for damages based on fraud (and here it is conceded that the

firm acted in good faith), the statute starts to run from the date of the alleged conversion and is not tolled by the fact that the owner may have been ignorant of the conversion; and that therefore in the present case, even though the evidence were sufficient to establish a conversion (*Byer* v. *Canadian Bank of Commerce,* 8 Cal. (2d) 297 [65 Pac. (2d) 67]; *Poggi* v. *Scott,* 167 Cal. 372 [139 Pac. 815, 51 L. R. A. (N. S.) 925]), plaintiff's cause of action was barred because admittedly the sale of the stock took place on May 12, 1932, and the action was not filed until February 15, 1937, or more than four years and nine months subsequent to the date of the alleged conversion. The conclusion so reached by the trial court is amply supported by authority in this state and in other jurisdictions. The case of *Rose* v. *Dunk-Harbison Co.,* 7 Cal. App. (2d) 502 [46 Pac. (2d) 242], wherein numerous authorities are cited, is directly in point. (See, also, 65 Cor. Jur., p. 72. Among other supporting authorities are Meyer on The Law of Stock Brokers and Stock Exchanges, sec. 180, p. 674; *Burt* v. *Meyer,* 37 Hun (N. Y.), 277; *Ganley* v. *Troy City Nat. Bank,* 98 N. Y. 487.)

 It was plaintiff's contention at the trial that his cause of action for conversion did not accrue and hence that the statute did not start to run until the making of the demand. It is well settled, however, that where possession is obtained lawfully and there has been an actual conversion, a demand is not necessary (*Mier* v. *Southern California Ice Co.,* 56 Cal. App. 512 [206 Pac. 83]; *Yamada* v. *Osawa,* 12 Cal. App. (2d) 133 [54 Pac. (2d) 1135]; *Metzler* v. *Foster Holding Co.,* 5 Cal. (2d) 278 [54 Pac. (2d) 447]; *Fiedler* v. *Allen,* 117 Cal. App. 622 [4 Pac. (2d) 292]; *Fitzgerald* v. *Walser,* 102 Cal. App. 719 [283 Pac. 351]); the cause of action for conversion is complete at the time of the wrongful disposal of the property, and the statute starts to run from that time (*Bell* v. *Bank of California,* 153 Cal. 234 [94 Pac. 889]; *Ganley* v. *Troy City Nat. Bank, supra*). In other words, as said in Meyer on The Law of Stock Brokers and Stock Exchanges, section 180, at page 673: "In an action by the customer for conversion of his securities the period of limitation commences on the date of the conversion. The cause of action is then complete. No tender or demand is necessary and the running of the statute cannot be extended by making a tender and demand at a later date. Nor is it necessary

that the customer be informed of the fact that his securities have been converted. The time starts running even though he is ignorant of his rights."

As stated, the cause of action pleaded in the first count was conversion, and the case was tried by the parties and decided by the trial court as such. The second count, based on breach of contract, was abandoned by stipulation, and therefore was out of the case. In this respect the trial court in its findings specifically stated, "By reason of the foregoing findings and the conclusions of law thereon [which are based entirely on the conversion theory], the court makes no further findings with respect to the other issues made by the complaint of plaintiff and the answer of defendants E. F. Hutton & Company and Alan J. Lowrey". But in presenting the appeal plaintiff advances a new theory. It is contended in substance that notwithstanding the fact that the first cause of action upon which he rested his case before the trial court was for conversion, the allegation contained therein of demand and refusal to deliver the stock is sufficient to justify the construction that the cause of action pleaded therein is also one for breach of a written contract; that such an action is governed by the four year statute of limitations, which does not start to run until the breach occurs; that the breach here did not occur and consequently the cause of action based thereon did not accrue until plaintiff's demand for the return of the stock was refused, because, so plaintiff contends, it will be presumed in the absence of proof to the contrary that until such demand was refused the brokerage firm had in its possession similar stock which was available for delivery to plaintiff.

 It is evident, however, that the state of the record will not permit plaintiff's new theory to be considered, for as said in *Gibson Properties Co.* v. *City of Oakland,* 12 Cal. (2d) 291 [83 Pac. (2d) 942], it is well settled that the theory upon which a case was tried in the court below must be followed on appeal. (*Story* v. *Nidiffer,* 146 Cal. 549 [80 Pac. 692] ; *Durkee* v. *Chino Land & Water Co.,* 151 Cal. 561 [91 Pac. 389] ; *Kaufman* v. *Tomich,* 208 Cal. 19 [280 Pac. 130].) The same rule is stated in *Ernst* v. *Searle,* 218 Cal. 233 [22 Pac. (2d) 715], as follows: "The rule is well settled that the theory upon which a case is tried must be adhered to on appeal. A party is not permitted to change his position and

adopt a new and different theory on appeal. To permit him to do so would not only be unfair to the trial court, but manifestly unjust to the opposing litigant. (2 Cal. Jur., sec. 68, p. 237.)''

Moreover and in any event, the law does not recognize any such presumption as contended for by plaintiff. It was definitely so held in *Bell* v. *Bank of California, supra,* wherein a similar contention was made, and in ruling adversely thereon the court held that if the pledgor seeks delivery of similar property, he must allege and show that the defendant is in a position to make such delivery. In the present case there is an entire absence of any such allegations and proof; nor does the first count contain any of the other allegations which are essential to the support of a cause of action based on the theory plaintiff now seeks to invoke. The facts of the case relied upon by plaintiff in support of his point (*Kagee* v. *Bencich,* 27 Cal. App. (2d) 469 [81 Pac. (2d) 265]), are materially different from those here involved.

The remaining points are incidental to those already discussed, and therefore do not require special attention.

The judgment is affirmed.

Peters, P. J., and Ward, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied June 19, 1941.