[Civ. No. 16546. First Dist., Div. Two. Jan. 16, 1956.]

LOUIS RENCH, Respondent, v. WATSONVILLE MEAT
COMPANY (a Corporation), Appellant.

Lucas, Wyckoff & Miller and Wyckoff, Parker, Boyle & Pope for Appellant.

Marvin C. Hix for Respondent.

NOURSE, P. J.—By letter of May 8, 1951, the Watsonville Meat Company, hereinafter called the Company, employed the parties Yrigoyen and Rench to procure a quota for the Company's plant from the Office of Price Stabilization and to manage their meat business, with the exception of the financial part, which would be controlled by an accountants' firm, the contract to run for a year and to be continued from year to year if certain profits would be obtained. By letter of May the ground that Rench and Yrigoyen had induced it to enter into the agreement by fraudulent concealment of material 21, 1951, the Company rescinded said employment contract on

facts. The allegedly material facts referred to were, insofar as relevant to this appeal, that in 1926 or 1927 Rench was convicted of embezzlement and served a term in San Quentin. He, however, received a full and unconditional pardon on April 14, 1942. In an action of Rench for breach of the agreement with cross-complaint of the Company for rescission on the ground of fraud in the inception, the judgment granted Rench as damages a year's salary plus interest, based on findings, among others, to the effect that the rescission and repudiation of the contract was without cause or justification, that Rench and Yrigoyen did not make representations inconsistent with the conviction and that Rench was under no duty to volunteer a statement as to it. The Company appeals. (Yrigoyen did not join in Rench's action and was therefore joined by Rench as a party defendant.)

Appellant concedes that the finding of absence of fraud is supported by the conflicting evidence and it does not develop any grievance as to the amount of the recovery. Its two grievances will be treated successively.

Its first contention is that the termination of the agreement with Rench was justified by section 3005 of the Labor Code, which reads in part:

"A master may discharge any servant . . . whether or not engaged for a fixed term:

. . . . . . . . . . . . . .

"(b) If, being employed . . . in a confidential position, the master discovers that the servant has been guilty of misconduct, before or after the commencement of his service, of such a nature that, if the master had known or contemplated it, he would not have so employed the servant."

No such contention was made in the trial court although it may be conceded that in the sense of section 3005 respondent was a servant employed in a confidential position. No other conduct of Rench was in issue than his alleged fraud in not *disclosing* the old conviction. The questions whether a conviction for which a full pardon had been obtained could be considered "misconduct" in the sense of section 3005 of the Labor Code independent of any allegation or proof of an actual act of embezzlement was not discussed below. ("In civil actions a judgment of conviction in a criminal case is not admissible over objection to establish the truth of the facts upon which the criminal action was predicated." *Manning* v. *Watson*, 108 Cal.App.2d 705, 711 [239 P.2d 688] and cases there cited.) The questions whether either

the conviction or the embezzlement were after the pardon a sufficient ground for termination of the agreement were not in issue below and no findings were made on them, except that there was the general finding that the repudiation was without justification. There was even no testimony from the side of the Company that if the conviction and pardon had been disclosed the Company would not have employed Rench. (The rescission was handed to Rench as soon as the Company heard of the old conviction, without knowledge of the pardon and without asking Rench for any explanation.)

We hold that the presentation of the above contention for the first time on appeal constitutes a change of theory which prevents us from considering it. *Coy* v. *E. F. Hutton & Co.,* 44 Cal.App.2d 386, 391 [112 P.2d 639] presents a comparable situation. In that case it was contended on appeal that although the appellant had in the trial court rested his case upon a cause of action for conversion, the allegation contained therein of demand and refusal to deliver was sufficient to justify the construction that the cause of action pleaded therein was also one for breach of contract. The court rejected the contention in the following language applicable to this case:

"It is evident, however, that the state of the record will not permit plaintiff's new theory to be considered, for as said in *Gibson Properties Co.* v. *City of Oakland,* 12 Cal.2d 291 [83 P.2d 942], it is well settled that the theory upon which a case was tried in the court below must be followed on appeal. (*Story* v. *Nidiffer,* 146 Cal. 549 [80 P. 692] ; *Durkee* v. *Chino Land & Water Co.,* 151 Cal. 561 [91 P. 389] ; *Kaufman* v. *Tomich,* 208 Cal. 19 [280 P. 130].) The same rule is stated in *Ernst* v. *Searle,* 218 Cal. 233 [22 P.2d 715], as follows: 'The rule is well settled that the theory upon which a case is tried must be adhered to on appeal. A party is not permitted to change his position and adopt a new and different theory on appeal. To permit him to do so would not only be unfair to the trial court, but manifestly unjust to the opposing litigant. (2 Cal.Jur., § 68, p. 237.)' "

The unjustness to respondent is especially clear in this case because the justification of the termination of the employment under section 3005 of the Labor Code, if possible in law, would present an undecided question of fact which would require remand and new trial. Considering the tendency of the newer legislation to give in civil matters full effect to a pardon except with respect to certain licensed professions (see

Code Civ. Proc., §§ 2051, 2065, and Pen. Code, §§ 4853, 4852.15) we would certainly not be willing to hold that an old conviction of embezzlement for which full pardon was obtained justified discharge under section 3005 of the Labor Code as a matter of law.

Appellant's second contention is that the termination of the whole contract as to both Rench and Yrigoyen was justified by a severe heart attack which Yrigoyen suffered and for which he was hospitalized about May 10, 1951, which heart attack was not known to the parties at the time of the repudiation of the contract on May 21, 1951. It is contended that appellant contracted for the services of both Yrigoyen and Rench and that the disabling sickness of Yrigoyen terminated the whole contract and was a valid defense to Rench's action, although it was not the basis of the rescission.

The parties discuss at length the question whether this defense was duly before the trial court. When at the end of plaintiff's case Rench was permitted to amend his complaint so as to state a cause of action for repudiation of the contract against the Company only (it had originally been combined with actions for inducing of the repudiation and slander against individual defendants, which were all eliminated by dismissal or nonsuit) the attorney of the Company declared that he wished to answer to bring in some new defenses, relating to failure of consideration and impossibility of performance. The court stated that ''it is stipulated that the allegations of the complaint are deemed denied and that the defendant may tender any and all special defenses without the necessity of filing at this time a formal pleading and leave will be granted to file one later,'' to which the parties agreed. Evidence was then introduced also as to the illness and functions of Mr. Yrigoyen. At the end of the trial, that same day the court gave an order for judgment for Rench in the rescission action of the Company and as to Rench's complaint ordered the case submitted on briefs relating to the question whether the contract was terminated by any inability on Mr. Yrigoyen's part, to be filed within 30-30 and 10 days defendant Company to present the opening brief. The case was briefed without the Company filing an answer and on July 7, 1954, the court filed an opinion and order for judgment for plaintiff in which it held that the defense of impossibility of performance was not before the court because of the failure of defendant to file an answer but in which that defense was also rejected on the merits. Findings were

ordered drawn both on the failure to answer and adversely to the defense of impossibility. Immediately after the order was filed the Company filed its answer to the second amended complaint, which answer was stricken on motion of plaintiff.

We need not decide whether the answer which should certainly have been filed not later than defendant's opening brief and was apparently abandoned when defendant failed to do so, was correctly stricken, because findings have been made on the substance of this defense, which has been fully tried and we can therefore review it also in the absence of supporting pleadings, as is conceded by respondent. (Compare *Campagna* v. *Market St. Ry. Co.*, 24 Cal.2d 304, 308 [149 P.2d 281]; *Townsend* v. *Allen*, 114 Cal.App.2d 291, 299 [250 P.2d 292].)

Over and above the finding ''that said contract was not impossible of performance because of the sickness of Frank Yrigoyen,'' which is attacked by appellant there are several findings relating to this matter which are not attacked and which together with testimony in the case show the following basis for the decision:

When the contract with Rench and Yrigoyen was made the plant of the Company was undergoing reconstruction in order to comply with federal regulations, and before it could be operated it was necessary to obtain a ''quota'' for the slaughtering of livestock from the Office of Price Stabilization. When Rench was employed he went to work overseeing the reconstruction of the plant and trying to obtain the ''quota'' from the Office of Price Stabilization. He continued to do so for some time after the notice of rescission until further notified to desist from further performance. The correspondence of the attorneys about this subject extended to early July, 1951 and at that time no ''quota'' had yet been obtained.

When the notice of rescission was given the Company did not know of Mr. Yrigoyen's heart attack. Its president learned this approximately a week later. Yrigoyen entered a hospital on May 10, 1951, and remained there for 22 days after which he returned to his home where he remained in bed. He resumed work (not with Company) in the latter part of October or the first part of November, 1951. On or about June 26, 1951, the Company leased its plant to the Alpert Meat Company under a lease to commence August 1, 1951, for a term of more than one year, and Alpert Meat Company entered into possession and continued in possession under the lease for more than one year; by leasing the plant the Com-

pany made its own operation of the plant impossible. The Company did not for more than two years after the repudiation make any claim that the contract was impossible of performance because of the sickness of Mr. Yrigoyen and for the first time asserted such claim at the trial herein.

From the above facts the court could conclude that until June 26th when the plant was leased the sickness of Mr. Yrigoyen did not cause any impossibility because no "quota" had yet been obtained and the plant was in course of reconstruction and that by the act of leasing the plant the performance was made impossible by the Company itself and the Company had no use any more for Yrigoyen's services. It must be noted that the Company, which had the burden of proof of the impossibility at no time contended or offered any testimony to the effect that the reason for the leasing of the plant was the sickness of Mr. Yrigoyen, although the president of the Company was produced as a witness. Hence the court was entitled to infer that there was no relation between said sickness and the lease. This together with the fact that the impossibility itself was not raised either in a former action for rescission instituted by appellant or in the present action until the trial, justifies the conclusion to which the trial court also came in its opinion, that the defense of impossibility was an afterthought without any relation to the actual facts of the case.

It may be noted that although death or permanent disability of one employed for services of a personal nature terminates the contract the same is not true as to temporary illness or disability. ▮ The rule is stated as follows in 35 American Jurisprudence 474:

"Whether an employment for a definite period may be rightfully terminated by the employer before the expiration of the stipulated term because of illness or disability of the employee is a matter dependent upon several factors, such as the length of the stipulated term and the nature of the services, as well as the length of the illness or the nature of the disability. Generally, it may be said that absence because of illness or injury for such length of time as to cause serious inconvenience or injury to the employer's business is sufficient reason for discharge, but a mere temporary illness ordinarily is not."

The effect of such temporary illness or disability on the employer's business is evidently a matter of fact for the trial court. In this case the court could hold that Mr. Yrigoyen's

illness under the above circumstances did not cause any inconvenience or injury to appellant's business and *a fortiori* no impossibility of the employment of plaintiff Rench. Its decision is binding on this court.

 No contention was made below, as is tried on appeal, to the effect that Rench and Yrigoyen were employed as one unit and that Rench had to allege and prove that Yrigoyen also was ready, able and willing to perform. The sickness of Yrigoyen was treated by the Company below as an affirmative defense of impossibility and findings were made accordingly. Appellant cannot change its position in that respect for the first time on appeal.

 Appellant complains of the rejection of its offer of proof that Mr. Yrigoyen was to be the manager insofar as cattle buying and selling of products was concerned to show the extent to which his illness caused impossibility. It may be conceded that the admission of evidence for that purpose would not have been objectionable as varying the written agreement, but the exclusion was not prejudicial, because no buying and selling functions of Mr. Yrigoyen were involved in the case since respondent leased the plant to others before it was in operation.

Judgment affirmed.

Dooling, J., and Kaufman, J., concurred.

A petition for a rehearing was denied February 15, 1956, and appellant's petition for a hearing by the Supreme Court was denied March 14, 1956.