Filed 9/15/23  Russell v. Walsh CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION FOUR

|  |  |
|---|---|
| STEPHEN RUSSELL,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>TARA WALSH,<br><br>        Defendant and Appellant. | A165356<br><br>(City & County of San Francisco<br>Super. Ct. No. CGC-18-570137) |

Stephen Russell sued Tara Walsh for battery, intentional infliction of emotional distress, and domestic violence (Civ. Code, § 1708.6, subd. (a)), and a jury found her liable for all three torts.  Walsh, who represented herself at trial and does so again on appeal, argues that the evidence is insufficient to support the jury's verdict.  She also contends that the trial court erred in declining to continue the trial when she told the court about her mental health issues.  Finding none of these arguments persuasive, we affirm the judgment.

The parties are familiar with the facts and our opinion does not meet the criteria for publication.  (Cal. Rules of Court, rule 8.1105(c).)  We confine our discussion to the information that is relevant to our conclusions and to our statement of the reasons that have led us to them.  (See Cal. Const., art. VI, § 14; *Lewis v. Superior Court* (1999) 19 Cal.4th 1232, 1262.)

# DISCUSSION

## 1. The Trial Court Acted Within Its Discretion in Electing Not to Continue the Trial

Walsh argues that the trial court "erred in refusing to continue the trial when . . . Walsh expressed that she was having mental health issues." We disagree.

"The court may grant a continuance only on an affirmative showing of good cause requiring the continuance." (Cal. Rules of Court, rule 3.1332(c).) "A trial court has broad discretion in ruling on a motion for a continuance. [Citation]. It is the duty of the trial court to vigorously insist upon cases being heard and decided in the most timely manner possible, unless there are compelling reasons to the contrary." (*Midwest Television, Inc. v. Scott, Lancaster, Mills & Atha, Inc.* (1988) 205 Cal.App.3d 442, 456.) "Unnecessary continuances are wasteful, nonproductive, time-consuming and a fertile ground for criticism by the public of the courts." (*County of San Bernardino v. Doria Mining & Engineering Corp.* (1977) 72 Cal.App.3d 776, 781.) "A trial court has great discretion in the disposition of an application for a continuance. Absent a clear abuse of discretion, the court's determination will not be disturbed." (*Estate of Smith* (1973) 9 Cal.3d 74, 81.)

According to Walsh, there was good cause to continue her trial because she told the court that she was "not mentally fit to go through the trial" and offered to "obtain[] a letter from her psychiatrist" to the same effect. However, when Walsh first made the request for a continuance, the jury had been sworn and she had just delivered an opening statement in propria persona. Having observed that opening statement, the trial court could reasonably conclude that Walsh was able to proceed despite any difficulties.

The trial court buttressed that conclusion after Walsh faced direct examination: "[T]he Court is not precluding you from [presenting] the [psychiatrist's] note, but I will also tell you that if you wish to continue this case in some form or fashion, that I will require under the law good cause. So far I've not seen a good cause basis." As the trial court observed, Walsh had "been able to withstand the examination by" opposing counsel, and "seem[ed] to have the ability to understand the nature of the proceedings, what's going on, and to proceed with the case." Moreover, even though the court made clear that Walsh could present a note from a psychiatrist to support her request and emphasized that she had not yet established good cause, Walsh never did so.

Under these circumstances, we cannot find an abuse of discretion in the trial court's conclusion that Walsh's oral statements concerning her mental health problems did not establish good cause to continue the trial and thereby override the courts' vital interest in avoiding costly delays.

### 2. *Walsh's Challenges to the Sufficiency of the Evidence Are Waived*

Walsh argues that no substantial evidence supports a finding that she committed battery, intentional infliction of emotional distress, or domestic violence against Russell. Because she has not made the requisite showing in any of those respects, we disagree.

In reviewing the sufficiency of the evidence, we presume that the " ' record contains evidence to sustain every finding of fact.' " (*Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881 (*Foreman*).) It is the appellant's burden to demonstrate that it does not. (*Ibid.*) "In furtherance of this burden, the appellant must fairly summarize all the facts in the light most favorable to the judgment." (*Burch v. CertainTeed Corp.* (2019) 34 Cal.App.5th 341, 349.) "Accordingly, if . . . 'some particular issue of fact is

3

not sustained, they are required to set forth in their brief *all* the material evidence on the point and *not merely their own evidence.* Unless this is done the error assigned is deemed to be waived.' " (*Foreman*, at p. 881.)

Here, Walsh's opening brief summarizes only her own testimony, not Russell's. By neglecting Russell's testimony—which described symptoms he experienced, how those symptoms would abate in Walsh's absence, a blood test that revealed high levels of lithium in his body, and the statements of a nanny who had witnessed Walsh drugging his wine—Walsh failed "to set forth . . . *all* the material evidence" pertaining to the sufficiency of the evidence for battery, intentional infliction of emotional distress, and domestic violence. (*Foreman, supra,* 3 Cal.3d at p. 881.) Accordingly, her claims in those respects are waived. (*Ibid.*)

### 3. Even if Those Claims Were Not Waived, Substantial Evidence Supports the Jury's Verdict to All Three Torts

Walsh's challenges to the sufficiency of the evidence fail on the merits, as well. We explain below.

#### a. Standard of Review

In evaluating the record for substantial evidence, we determine whether the evidence, "contradicted or uncontradicted," will support the judgment. (*Bowers v. Bernards* (1984) 150 Cal.App.3d 870, 873–874.) " 'Substantial evidence' is evidence of ponderable legal significance, evidence that is reasonable, credible and of solid value." (*Roddenberry v. Roddenberry* (1996) 44 Cal.App.4th 634, 651.) " ' "The testimony of a [single] witness . . . may be sufficient" [to support a judgment].' " (*In re Marriage of Slivka* (1986) 183 Cal.App.3d 159, 163.) "It is not our role as a reviewing court to reweigh the evidence or to assess witness credibility." (*Thompson v. Asimos* (2016) 6 Cal.App.5th 970, 981 (*Thompson*).)

4

### b. Battery

First, Walsh challenges the sufficiency of the evidence for battery. " 'A battery is any intentional, unlawful and harmful contact by one person with the person of another. . . . A harmful contact, intentionally done is the essence of a battery. . . . A contact is "unlawful" if it is unconsented to. . . .' [Citation.] The elements of a civil battery are: ' "1. Defendant intentionally did an act which resulted in a harmful or offensive contact with the plaintiff's person; [¶] 2. Plaintiff did not consent to the contact; [and][¶] 3. The harmful or offensive contact caused injury, damage, loss or harm to the plaintiff." ' " (*Fluharty v. Fluharty* (1997) 59 Cal.App.4th 484, 497 (*Fluharty*).)

Here, Walsh and Russell resided in New York City and San Francisco, respectively. They met in New York in 2015 and began a dating relationship. Russell testified that in 2016, after a visit from Walsh, he became "severely ill . . . to the point [he] was unable to get out of bed." Soon after giving birth to their daughter in early 2017, Walsh came to San Francisco to stay with Russell. From that time through the middle of the next year, there were "at least a dozen times" when Russell suspected he had been drugged. During some of those times, he went "to the emergency room to get toxicology reports . . . ." According to Russell, "it felt like being knocked out," like "you're going to lose consciousness." Such episodes would occur when Walsh was staying in the same city as Russell, but abate once the two had parted.

In her own testimony, Walsh admitted that on at least two occasions during the same time period, she put the prescription drug Seroquel into Russell's wine without asking his permission or telling him she was doing so. She then "put it on the coffee table" near him, intending that Russell ingest the drug. When a nanny later told Russell about Walsh drugging the wine, the revelation "[e]xplained . . . 90 percent of what [he] had been experiencing

5

that month": "a very confusing set of symptoms" related to the drug's onset, "the panic [he] would experience upon noticing [he] was drugged, and the subsequent "withdrawal and neuropathy."

A jury hearing that testimony could reasonably find by a preponderance of the evidence that Walsh had battered Russell. Walsh admitted to drugging Russell's wine and placing it near him, intending for him to drink it. And Russell explained the abnormal and unpleasant sensations he experienced around that time. On that basis, it is reasonable to infer that Walsh " ' "intentionally did an act which resulted in a harmful or offensive contact with [Russell's] person." ' " (*Fluharty*, *supra*, 59 Cal.App.4th at p. 497.) That Russell " ' "did not consent to the contact" ' " follows from the testimony showing that he was ignorant of Walsh's conduct and panicked upon feeling the drug's effects. (*Ibid*.) And Russell's testimony regarding his symptoms supports a finding that Walsh's actions " ' "caused . . . harm . . . ." ' " (*Ibid*.)

As for Walsh's contention that she drugged Russell in self-defense, it cannot survive the standard of review operative here. That affirmative defense requires the defendant to have "reasonably believed, in view of all the circumstances of the case, that the plaintiff was going to harm him or her. . . ." (*J.J. v. M.F.* (2014) 223 Cal.App.4th 968, 976.) Here, Russell testified that he never physically harmed Walsh or threatened her with physical harm. If that testimony is credited, then Walsh could not have *reasonably* believed Russell was going to harm her. As we have already observed, "[i]t is not our role as a reviewing court to reweigh the evidence or to assess witness credibility." (*Thompson*, *supra*, 6 Cal.App.5th at p. 981.) Accordingly, we defer to the jury in Walsh's case, which apparently resolved this question of credibility against her.

Finally, in arguing that Russell consented to being drugged, Walsh relies on two cases: *Piedra v. Dugan* (2004) 123 Cal.App.4th 1483 and *Saxena v. Goffney* (2008) 159 Cal.App.4th 316. However, neither case is relevant to her argument. In both *Piedra* and *Saxena*, the defendants were medical doctors and the legal analysis in those cases related to signed consent forms by which the plaintiffs or their guardians *expressly* consented to medical treatment. (*Piedra* at p. 1496; *Saxena* at p. 321.) In contrast, Walsh argues only that Russell rendered *implied* consent.

Unaided by *Piedra* and *Saxena*, Walsh's argument challenging the sufficiency of the evidence for battery comprises a series of assertions unsupported by any legal authority or citations to the record. For that reason, it does nothing to undermine our analysis supporting the verdict. (See *Foreman, supra*, at p. 881 [it is appellant's burden to demonstrate the insufficiency of the evidence].)

### c. Intentional Infliction of Emotional Distress

Second, Walsh challenges the sufficiency of the evidence for intentional infliction of emotional distress. "The elements of the tort of intentional infliction of emotional distress are: ' "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct. . . ." Conduct to be outrageous must be so extreme as to exceed all bounds of that usually tolerated in a civilized community.' [Citation.] The defendant must have engaged in 'conduct intended to inflict injury or engaged in with the realization that injury will result.' " (*Christensen v. Superior Court* (1991) 54 Cal.3d 868, 903; see also *Hughes v. Pair* (2009) 46 Cal.4th 1035, 1050.)

7

Here, Walsh's extreme and outrageous conduct consisted of her drugging Russell's wine without his knowledge or consent. Her reckless disregard for the probability of causing emotional distress can be inferred from the fact that she accompanied Russell on one of his trips to the emergency room for a toxicology report when he suspected he had been drugged. Walsh therefore had reason to know that Russell believed he was being drugged and that this belief was causing him distress, and she acted with that knowledge when, later, she admittedly drugged him herself. And Russell's testimony regarding his feelings of panic upon feeling the effects of being drugged support the jury's finding that Walsh's conduct caused Russell's emotional distress.

### d. Domestic Violence

Third, Walsh challenges the sufficiency of the evidence for domestic violence. Civil Code section 1708.6, subdivision (a) provides: "A person is liable for the tort of domestic violence if the plaintiff proves both of the following elements: [¶] (1) The infliction of injury upon the plaintiff resulting from abuse, as defined in subdivision (a) of Section 13700 of the Penal Code. [¶] (2) The abuse was committed by the defendant, a person having a relationship with the plaintiff as defined in subdivision (b) of Section 13700 of the Penal Code." " 'Abuse' means intentionally or recklessly causing or attempting to cause bodily injury, or placing another person in reasonable apprehension of imminent serious bodily injury to himself or herself, or another." (Pen. Code, § 13700, subd. (a).)

Here, Walsh does not contest the jury's finding that she and Russell had the requisite relationship for the tort of domestic violence; only the "injury" finding is contested. But Walsh committed abuse because she placed Russell "in reasonable apprehension of imminent serious bodily injury to

8

himself" (Pen. Code, § 13700, subd. (a)) by inducing the panic Russell experienced upon noticing he had been drugged. That abusive conduct resulted in injuries that included Russell's symptoms of "withdrawal and neuropathy." Walsh offers another explanation for those symptoms— Russell's pre-existing "mental health issues"—but "[u]nder the substantial evidence standard of review, 'where two or more different inferences can reasonably be drawn from the evidence, this court is without power to substitute its own inferences for those of the [trier of fact] and decide the case accordingly.'" (*Escobar v. Flores* (2010) 183 Cal.App.4th 737, 752.)

## DISPOSITION

The judgment is affirmed. Russell is entitled to recover his costs on appeal.

GOLDMAN, J.

WE CONCUR:

STREETER, Acting P. J.
HIRAMOTO, J. *

---

* Judge of the Superior Court of California, County of Contra Costa, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

9